IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

MICHAEL GILLIN,                    CIVIL ACTION

and

ACE & SONS, INC.,

         Plaintiffs,

         v.

UNIVERSAL UNDERWRITERS GROUP,

         Defendants.            No. 2:09-CV-5855

**CONCISE STATEMENT OF UNDISPUTED MATERIAL
FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

NOW, comes Defendant, Universal Underwriters Insurance Company, incorrectly identified as Universal Underwriters Group ("Universal"), by and through its attorneys, Dapper, Baldasare, Benson, Behling & Kane, P.C., and files the following Concise Statement of Undisputed Material Facts in Support of Motion for Summary Judgment:

1. Plaintiff Michael Gillin is the sole shareholder of Plaintiff Ace and Sons, Inc. See deposition of Michael Gillin, attached hereto as Exhibit A, at 7.

2. In or about 1991 or 1992, Mr. Gillin purchased a building at 99 Chester Pike in which he operated Ace and Sons, Inc. See Exhibit A, at 9.

3. In 2001, a retaining wall was constructed on property owned by Troy Fink at 77 Chester Pike, immediately adjacent to Mr. Gillin's 99 Chester Pike location. See Exhibit A, at 32-33.

4.      On or about November 20, 2002, Mr. Gillin noticed cracks in his building at 99 Chester Pike, near the rear of the building. See Exhibit A, at 38-41.

5.      Mr. Gillin reported the cracks to Universal on November 21, 2002. See Exhibit A, at 42.

6.      On the very same day that Mr. Gillin reported the cracks to Universal, Universal retained an independent adjuster from Crawford and Company, contacted Mr. Gillin about inspecting Mr. Gillin's claim. See Exhibit A, at 43; See also deposition of Steven Mason, attached hereto, as Exhibit B, at 11-12, 16.

7.      An independent adjuster from Crawford and Company met with Mr. Gillin on November 25, 2002. See Exhibit B, at 18.

8.      After inspecting the property, Crawford and Company notified Mr. Gillin that it would be necessary for a structural engineer, Robert Weber, to inspect the property. See Exhibit A, at 43.

9.      Engineer Robert C. Weber, P.E., R.P.A, met with Mr. Gillin and inspected the property on November 26, 2002. See Exhibit A, at 78; See also Exhibit B, at 26.

10.     On December 3, 2002, Mr. Weber wrote to Tory Powers, Code Enforcement Official of the Borough of Darby, regarding the damage to Mr. Gillin's building. Mr. Weber reported that a retaining wall on Mr. Gillin's neighbor's property "moved as a result of soil and hydrostatic pressure from behind the retaining wall and, therefore, has and continues to exert a greater horizontal force on the left side wall of the Ace and Sons Body Shop building than that on the right side." See Exhibit C, GILLIN 040 - 041.

11.     On January 9, 2003, Mr. Weber issued a report regarding the cause of Mr. Gillin's loss. Mr. Weber reported "cracks" and "distress" in Mr. Gillin's building. Mr. Weber reported

that the damage was caused by "soil and hydrostatic pressure" after the retaining wall was constructed on Mr. Gillin's neighbor's property. See Exhibit D, at GILLIN 036 - GILLIN 039.

12. On January 14, 2003, Universal forwarded Mr. Weber's report to Mr. Gillin. See Exhibit E, at GILLIN 034.

13. In the January 14, 2003 letter forwarding Mr. Weber's report, Universal explained that the damage to the 99 Chester Pike property was not covered by Mr. Gillin's insurance Policy with Universal. See Exhibit E; See also Exhibit B, at 42-43, 47-51.

14. In the January 14, 2003 letter forwarding Mr. Weber's report, Universal confirmed that Universal had verbally denied coverage for Mr. Gillin's claim during conversations with Mr. Gillin on December 3, 2002 and December 16, 2002, "based on a verbal inspection report from the independent adjuster from Crawford and Company and the engineer." See Exhibit E.

15. By way of letter dated October 28, 2003 Plaintiffs' counsel requested that Universal reconsider its coverage denial. See Exhibit B, at 58-61.

16. Universal reconsidered the claim and by way of letter dated December 30, 2003 confirmed that coverage was not available based upon exclusions (i), (l), (o), and (s) contained in Plaintiffs' insurance Policy. See Exhibit F; See also Exhibit B, at 61-64.

17. In relevant part, Part V of the Policy contains the following exclusions:

> **EXCLUSION – PERILS** WE will not pay for LOSS caused directly or indirectly by any of the following; such LOSS is excluded regardless of any other cause or event that takes place at the same time or in any sequence to such LOSS:
>
> ***
>
> (i) Animals, birds, mold, fungus, decay, wet or dry rots; smog, smoke, vapor or gas from agricultural or industrial operations; settling, cracking, shrinkage, bulging or expansion of foundations, walls, floors, roofs or ceilings;

3

\*\*\*

 (l) Earth movement, including but not limited to earthquake, volcanic eruption, explosion or fusion, landslide, mud flow or mudslide, earth sinking, rising or shifting;

\*\*\*

 (o) Flood, surface water, waves, tidal wave or water, overflow of streams or other bodies of water, or their spray, all whether or not driven by wind; underground water that exerts pressure on, flows, seeps or leaks through foundations, walls, basement and other floors, or through doors, windows or any opening in any of them...;

\*\*\*

 (s) Collapse, except when caused by SPECIFIED PERILS, UNNAMED PERILS or BREAKDOWN to the covered property.

See Exhibit G, at GILLIN 254 - 256.

 18. Richard Roberts, P.E., authored a report on Mr. Gillin's behalf which is dated September 30, 2005. Like Mr. Weber, Mr. Roberts opined that soil pressure caused the cracks in Mr. Gillin's building. See Exhibit H.

 19. A third expert, Matthias Szayna, P.E., authored a report on behalf of Mr. Gillin's neighbor. In the report, dated November 1, 2005, Mr. Szayna opined that "[t]he damage to the rear/east CMU foundation wall is from the forces exerted on the wall by the high and steep backfill having been placed against the foundation wall, the proximity of the driveway traffic, groundwater conditions, soil drainage, and volumetric changes in soil due to frost." See Exhibit I, at 65-66.

20. Furthermore, Mr. Gillin testified that his understanding was that "freezing and thawing of ground water" was the cause of his loss. Exhibit A, at 52, 78. Mr. Gillin explained that "[t]here wasn't anything else there to put any pressure on the building." See Exhibit A, at 77.

21. There is no evidence that anything other than "soil and hydrostatic pressure" directly or indirectly caused the cracks, thereby triggering exclusions (i), (l), (o) and (s).

22. Mr. Gillin sued his neighbor at 77 Chester Pike in the Court of Common Pleas of Delaware County for the damages to the 99 Chester Pike property, and obtained a verdict in the amount of $140,000. See Exhibit A, at 17-19.

23. Notably, Mr. Gillin relied on Mr. Weber's report and Mr. Roberts' report at the trial against his neighbor. Exhibit A, at 19-21, 63-64.

24. Mr. Gillin understood that the $140,000 verdict was based on his building's assessed value. See Exhibit A, at 25-26.

25. In his report, Plaintiffs' expert, Richard Roberts, opined that the damage to Mr. Gillin's building was approximately $130,000 to $140,000. See Exhibit G.

26. The verdict in the amount of $140,000 was satisfied. See Exhibit A, at 17.

27. Mr. Gillin testified that after the verdict was satisfied he paid approximately $40,000 for repairs to the 99 Chester Pike property, although he has not provided any documentary evidence regarding the repairs. See Exhibit A, at 26.

28. Mr. Gillin testified that he paid approximately $60,000 to his lawyer for the lawsuit against his neighbor, although Mr. Gillin has not provided any documentary support for his attorney fees. See Exhibit A, at 28.

29. Mr. Gillin did not incur any other expenses as a result of the damage. See Exhibit A, at 26-28.

30. Mr. Gillin retained $40,000 of the verdict for his business. See Exhibit A, at 28.

31. Mr. Gillin sold the property at 99 Chester Pike in November 2008 for $165,000. See Exhibit A, at 13, 26-27.

32. Plaintiffs' Policy with Universal states that Universal "will pay for LOSS to the property scheduled at the LOCATIONS from any cause, except as excluded or as stated otherwise in the declarations." See Exhibit F, at GILLIN 252.

33. Loss is defined by the Policy as "direct physical loss or damage". See Exhibit F at GILLIN 254.

34. The Policy states that the most Universal will pay for a loss, in relevant part, is the least of the following:

> (a) The ACTUAL CASH VALUE of repairs to the property with like kind and quality;
>
> (b) The ACTUAL CASH VALUE of replacement for the property with like kind and quality....

See Exhibit G, at GILLIN 258.

35. Furthermore, the Policy requires that Mr. Gillin "must protect YOUR right of recovery against others...." Exhibit F, at GILLIN 261.

Respectfully submitted,

DAPPER, BALDASARE, BENSON,
BEHLING & KANE, P.C.

By: _____
Robert E. Dapper, Jr.
PA I.D. #46378
rdapper@d3bk.com
Daniel J. Twilla
PA I.D. #93797
dtwilla@d3bk.com
Four Gateway Center, 10th Floor
444 Liberty Avenue
Pittsburgh, PA 15222
(412) 456-5555

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on November 2, 2010, a copy of the within **CONCISE STATEMENT OF MATERIAL FACTS** was filed via the Electronic Case Management System:

Matthew B. Weisberg, Esquire
Prochniak, Weisberg, P.C.
7 South Morton Avenue
Morton, PA  19070

*Counsel for Plaintiffs*

Robert E. Dapper, Jr.
Daniel J. Twilla