IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL GILLIN,   CIVIL ACTION

and

ACE & SONS, INC.,

    Plaintiffs,

v.

UNIVERSAL UNDERWRITERS GROUP,

    Defendants.   No.: 2:09-CV-5855

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Robert E. Dapper, Jr.
Pa. I.D. No. 46378

Dapper, Baldasare, Benson,
Behling & Kane, P.C.
Four Gateway Center, 10th Floor
444 Liberty Avenue
Pittsburgh, PA 15222
(412) 456-5555

(Counsel for Defendant Universal Underwriters Group)

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL GILLIN,   CIVIL ACTION

and

ACE & SONS, INC.,

    Plaintiffs,

v.

UNIVERSAL UNDERWRITERS GROUP,

    Defendants.   No.: 2:09-CV-5855

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STANDARD OF REVIEW FOR SUMMARY JUDGMENT | 2 |
| III. | ARGUMENT | 3 |
| | A. Count III of the Complaint for Breach of Contract should be dismissed because the Policy does not provide coverage for damages resulting from "cracking", "earth movement", "underground water that exerts pressure", or "collapse" | 3 |
| | B. Count III of the Complaint for Breach of Contract should be dismissed because Plaintiff have been fully compensated for their damages | 7 |
| | C. Plaintiff's claim for attorney's fees for breach of contract should be dismissed because the Policy does not provide for payment of attorney's fees and attorney's fees are generally not recoverable in a breach of contract action | 8 |

| | | |
|---|---|---|
| D. | Count I of Plaintiffs' Complaint, for bad faith, should be dismissed because Universal at all times had a reasonable basis for its investigation and denial of Plaintiffs' claim | 9 |
| E. | Count II of the Complaint, for violation of the Unfair Trade Practices and Consumer Protection Law should be dismissed because the Pennsylvania "Bad Faith" statute, C.S.A. §8371, is the exclusive remedy for alleged misconduct with respect to the handling of insurance claims, and the Complaint alleges only nonfeasance, which is insufficient to support the UTPCPL claim | 11 |
| F. | Count II of the Complaint for violation of the Unfair Trade Practices and Consumer Protection Law should be dismissed because Plaintiffs had not pled facts to establish that they justifiably relied on any unlawful conduct of Universal | 13 |
| IV. | CONCLUSION | 14 |

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL GILLIN,

and

ACE & SONS, INC.,

    Plaintiffs,

v.

UNIVERSAL UNDERWRITERS GROUP,

    Defendants.

CIVIL ACTION

No.: 2:09-CV-5855

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NOW, comes Defendant, Universal Underwriters Insurance Company, incorrectly identified as Universal Underwriters Group ("Universal"), by and through its attorneys, Dapper, Baldasare, Benson, Behling & Kane, P.C., and files the following Memorandum in Support of Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c).

### I. INTRODUCTION

Plaintiff Michael Gillin and each of the three different experts who reviewed Plaintiffs' property damage agree that the cracks in Plaintiffs' building were caused by soil and water pressure. Therefore, Plaintiffs' breach of contract claim should be dismissed because Plaintiffs are not entitled to coverage under their Policy with Universal, which unambiguously excludes coverage for damages for "cracking", "earth movement", "underground water that exerts pressure", and "collapse". The Policy exclusions "apply regardless of any other cause or event that takes place at the same time or in any sequence."

Even assuming, *arguendo*, that Plaintiffs' claim was covered by their Policy with Universal, Plaintiffs' breach of contract claim should be dismissed because Plaintiffs' have already been fully compensated for the cracking. Further, attorney's fees are not recoverable in a breach of contract action.

Plaintiffs' claim for bad faith should be dismissed because the evidence establishes that Universal conducted a reasonable investigation which demonstrated that there is no coverage. In fact, at a trial against a third party regarding the alleged damages, Plaintiffs called as their own witness the engineer that Universal retained to inspect Plaintiffs' loss, who agreed that the cracking was caused by "soil and hydrostatic pressure".

Plaintiffs' claim for alleged violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), should be dismissed because the Pennsylvania "bad faith" statute, 42 Pa. C.S.A. §8371, is the exclusive remedy for alleged misconduct with respect to the handling of insurance claims. Further, Plaintiffs allege only non-feasance, while a claim under the UTPCPL requires malfeasance. Nor is there any evidence that Plaintiffs' justifiably relied on any misfeasance by Universal, as is required to sustain a claim under the UTPCPL.

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Rule 56 "mandates the entry of summary judgment…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In order to avoid summary judgment, the non-moving party must point to sufficient

evidence for a jury to return a verdict in its favor – proffering evidence that is "merely colorable or not sufficiently probative" is not sufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986).

### III. ARGUMENT

**A. Plaintiff's claim for Breach of Contract should be dismissed because the Policy unambiguously excludes coverage for damages resulting from "cracking", "earth movement", "underground water that exerts pressure", or "collapse".**

Plaintiffs' breach of contract claim should be dismissed because it is undisputed that Plaintiffs' damages were caused by soil and water pressure, and are therefore excluded by the insurance Policy.

The task of interpreting an insurance contract is generally performed by the court. Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa.1983). When interpreting an insurance contract, the goal is to ascertain the intent of the parties as manifested by the language of the written instrument. Id. If the language is clear and unambiguous, a court is required to give effect to that language. Pennsylvania Mfrs'. Ass'n Ins. Co. v. Aetna Cas. & Sur. Ins. Co., 233 A.2d 548, 551 (Pa. 1967).

In determining whether a provision in an insurance policy is ambiguous, the test is whether "reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning." Celley v. Mutual Benefit Health & Accident Ass'n, 324 A.2d 430, 434 (Pa. Super. 1974). Thus, "[t]he fact that the parties do not agree upon the proper interpretation does not necessarily render the contract ambiguous." Vogel v. Berkley, 511 A.2d 878, 881 (Pa. Super. 1986). Additionally, "[a] court should read policy provisions to avoid

ambiguities, if possible, and not torture the language to create them." St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co., 655 F.2d 521, 524 (3d Cir.1981).

Here, the Policy states that Universal "Will pay for LOSS to the property scheduled at the LOCATIONS from any cause, except as excluded or as stated otherwise in the declarations."

Part V contains the following relevant exclusions:

> **EXCLUSION – PERILS** WE will not pay for LOSS caused directly or indirectly by any of the following; such LOSS is excluded regardless of any other cause or event that takes place at the same time or in any sequence to such LOSS:
>
> ***
>
> (i) Animals, birds, mold, fungus, decay, wet or dry rots; smog, smoke, vapor or gas from agricultural or industrial operations; settling, *cracking*, shrinkage, bulging or expansion of foundations, walls, floors, roofs or ceilings;
>
> ***
>
> (l) *Earth movement*, including but not limited to earthquake, volcanic eruption, explosion or fusion, *landslide, mud flow or mudslide, earth sinking, rising or shifting*;
>
> ***
>
> (o) Flood, surface water, waves, tidal wave or water, overflow of streams or other bodies of water, or their spray, all whether or not driven by wind; *underground water that exerts pressure on*, flows, seeps or leaks through foundations, walls, basement and other floors, or through doors, windows or any opening in any of them...;
>
> ***
>
> (s) Collapse, except when caused by SPECIFIED PERILS, UNNAMED PERILS or BREAKDOWN to the covered property.

See Concise Statement of Facts ("SOF"), at ¶ 16. (Emphasis added).

All three of the experts who inspected Plaintiff's damage agree that the cracks were caused by soil and hydrostatic pressure. On January 9, 2003, Robert Weber issued a report noting "cracks" and "distress" in Mr. Gillin's building. Mr. Weber reported that the damage was caused by "soil and hydrostatic pressure." (SOF, at ¶ 9,10).

Richard Roberts, P.E., authored a report on Mr. Gillin's behalf which is dated September 30, 2005. Like Mr. Weber, Mr. Roberts opined that "soil pressure" caused the cracks in Mr. Gillin's building.[1] (SOF, at ¶ 17).

A third expert, Matthias Szayna, P.E., authored a report dated November 1, 2005 stating that "[t]he damage to the rear/east CMU foundation wall is from the forces exerted on the wall by the high and steep backfill having been placed against the foundation wall, the proximity of the driveway traffic, groundwater conditions, soil drainage, and volumetric changes in soil due to frost." (SOF, at ¶ 18).

Furthermore, Mr. Gillin agreed in a deposition that "freezing and thawing of ground water" was the cause of his loss. Mr. Gillin explained that "[t]here wasn't anything else there to put any pressure on the building." (SOF, at ¶ 19).

There is no evidence that anything other than "soil and hydrostatic pressure" directly or indirectly caused the loss, thereby triggering exclusions (i), (l), (o) and (s).

Exclusion (i), barring coverage for damage relating to "cracking" clearly applies because the experts and Mr. Gillin noted that the damage involved "cracks" and "distress" in Mr. Gillin's building.

---

[1] Mr. Gillin relied on Mr. Weber's report and Mr. Roberts' report during a trial against his neighbor. (SOF, at ¶ 22). Accordingly, Mr. Gillin is judicially estopped from asserting a cause of loss different from that set forth in those reports. See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314 (3d Cir. 2003) ("Under doctrine of judicial estoppel, party should not be allowed, absent good explanation, to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing incompatible theory").

5

Exclusion (l), barring coverage for damage relating to earth movement, including "... earth sinking, rising, or shifting," applies where it is undisputed that the soil shifting caused pressure on Plaintiff's building.

Exclusion (o), barring coverage for damage relating to the exertion of pressure due to underground water applies where the experts and Mr. Gillin himself agree that ground water and the pressure exerted by same contributed to the cracks.

Additionally, to the extent that Mr. Gillin alleges that the collapse of his neighbor's retaining wall or the support for his building caused his cracks, exclusion (s) will apply.

Exclusions (i), (l), (o), and (s) are unambiguous and clearly applicable to preclude coverage for Plaintiffs' claim. Furthermore, because the event described in exclusions (i), (l), (o) and (s) caused or contributed to Plaintiffs' loss, the loss is excluded under the Policy regardless of any other cause or event Plaintiffs may assert because of the lead-in clause in Universal's Policy. The lead-in clause in the Policy states that Universal will not pay for a "LOSS caused directly or indirectly by [an excluded event]; such LOSS is excluded regardless of any other cause or event that takes place at the same time or in any sequence to such LOSS...." The lead-in clause is valid and enforceable. See Hughes v. State Farm Mutual Ins. Co., 2007 WL 2874849 (W.D. Pa. 2007); see also T.H.E. Ins. Co. v. Charles Boyer Children's Trust, 455 F.Supp.2d 284, 291 (M.D.Pa.2006), ("[r]ead literally, the lead-in clause precludes coverage of a loss so long as a specifically enumerated exclusion contributed in some way to the loss. Under this literal interpretation of the lead-in clause, the degree to which an excluded factor contributed to the loss is irrelevant."); Pisano v. Nationwide, 2009 WL 3415278 (E.D.Pa. 2009) (lead-in clause specifically precludes coverage if an excluded cause contributes concurrently or in any sequence).

Other events in the sequence of loss are irrelevant where it is undisputed that an excluded event is what caused the loss. Here, it is undisputed that Plaintiffs' damages were caused by soil and water pressure, and clearly fall within the exclusions in the Policy. Accordingly, Plaintiff's breach of contract claim should be dismissed.

**B.   Plaintiff's claim for Breach of Contract should be dismissed because Plaintiffs have been fully compensated for their damages.**

Even assuming, *arguendo*, that Plaintiffs' claim was covered under the Policy, Plaintiffs were fully compensated for their alleged damages.

Mr. Gillin sued his neighbor at 77 Chester Pike in the Court of Common Pleas of Delaware County for the damages to the 99 Chester Pike property, and obtained a verdict in the amount of $140,000. (SOF, at ¶ 21.) Mr. Gillin understood that the $140,000 verdict was based on his building's assessed value. (SOF, at ¶ 23.) In his report, Plaintiffs' expert, Richard Roberts, opined that the damage to Mr. Gillin's building was approximately $130,000 to $140,000. (SOF, at ¶ 24.) The verdict in the amount of $140,000 was satisfied. (SOF, at ¶ 25.)

Mr. Gillin testified that after the verdict was satisfied he paid approximately $40,000 for repairs to the 99 Chester Pike property, although he has not provided any documentary evidence regarding the repairs. (SOF, at ¶ 26). Mr. Gillin paid approximately $60,000 to his lawyer for the lawsuit against his neighbor, although, again, Mr. Gillin has not provided any documentary support for his attorney fees. (SOF, at ¶ 27). Mr. Gillin did not incur any other expenses as a result of the damage. (SOF, at ¶ 28). In fact, Mr. Gillin retained $40,000 of the verdict for his business and subsequently sold the property at 99 Chester Pike in November 2008 for $165,000. (SOF, at ¶ 29, 30).

The Policy states that the most Universal will pay for a loss is the least of the following:

>       (a) The ACTUAL CASH VALUE of repairs to the
>           property with like kind and quality;
>
>       (b) The ACTUAL CASH VALUE of replacement
>           for the property with like kind and quality....

Plaintiffs have been more than fully compensated for the value of their property damages by their neighbor and therefore have been made whole.[2]

### C. Plaintiff's claim for attorney's fees for breach of contract should be dismissed because the Policy does not provide for payment of attorney's fees and attorney's fees are generally not recoverable in a breach of contract action.

To the extent that Plaintiffs' breach of contract claim seeks attorney's fees, attorney's fees are not available for breach of contract absent express statutory authorization, clear agreement between the parties, or a clear exception. Bayne v. Smith, 965 A.2d 265 (Pa. Super. 2009). Plaintiffs have not pled any statute, agreement, or a clear exception permitting Plaintiffs to recover attorney's fees for breach of contract. In fact, Plaintiffs' Policy with Universal states that Universal "will pay for LOSS to the property scheduled at the LOCATIONS from any cause, except as excluded or as stated otherwise in the declarations." Loss is defined by the Policy as "direct physical loss or damage", and does not include amounts of money Plaintiffs may have unilaterally chosen to pay their attorneys to recover against the negligent party.

Because Plaintiffs recovered the full value of their damages from the neighboring property owner, and Plaintiffs are not entitled to attorneys' fees for breach of contract, Plaintiffs' Complaint for Breach of Contract should be dismissed.

---

[2] To the extent Plaintiffs recover damages against Universal, Universal is entitled to subrogation and recovery of the money paid by Gillin's neighbor to Gillin.

8

**D.   Plaintiffs' bad faith claim, should be dismissed because Universal at All Times had a Reasonable Basis for its Investigation and Denial of Plaintiffs' Claim.**

   **1.   To Establish Bad Faith, Clear and Convincing Evidence of a Frivolous or Unfounded Refusal to Pay an insurance is Required.**

For liability to be imposed under Pennsylvania's bad faith statute, 42 Pa. C.S.A. § 8371, the insured must be able to present clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy and (2) knew of or recklessly disregarded its lack of reasonable basis in denying the claim. Bonenberger v. Nationwide Mut. Ins. Co., 791 A.2d 378, 380 (Pa. Super. 2002); Terletsky v. Prudential Property and Casualty Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994), alloc. den., 659 A.2d 560 (Pa. 1995).

"A recovery for bad faith requires clear and convincing evidence of bad faith, rather than mere insinuation." Bostick v. ITT Hartford Group, Inc., 56 F. Supp.2d 580, 587 (E.D.Pa. 1999), citing, MGA Ins. Co. v. Bakos, 699 A.2d 751, 754 (Pa. Super. 1997) and Terletsky, supra. "The clear and convincing standard requires a showing by the plaintiffs that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." Bostick, 56 F. Supp. 2d at 587, citing, Stafford v. Reed, 70 A.2d 345, 348 (Pa. 1950); Packel, Pennsylvania Evidence, § 303.2 (1987.)

"In a bad faith case, summary judgment is appropriate when there is no clear and convincing evidence that the insurer's conduct was unreasonable and that it knew or recklessly disregarded its lack of a reasonable basis in denying the claim." Bostick, 56 F. Supp. 2d at 587.

"Bad faith cases are commonly decided at the summary judgment stage, with the court determining, as a matter of law, that the insurer has a reasonable basis for its actions." Quaciari at 581; see also, Kubrick v. Allstate Ins. Co., 2004 U.S. Dist. LEXIS 358 (E.D.Pa. 2004), aff'd

9

121 Fed. Appx. 447 (3d Cir. 2005); Kosierowski v. Allstate Ins. Co., 51 F. Supp.2d 583 (E.D.Pa. 1999), *aff'd without opinion*, 234 F.3d 1265 (3d Cir. 2000); Leo v. State Farm Mut. Auto. Ins. Co., 939 F. Supp. 1186 (E.D.Pa. 1996), *aff'd without opinion*, 116 F.3d 468 (3d Cir. 1997); Williams v. Hartford Cas. Ins. Co., 83 F. Supp. 2d 567 (E.D. Pa. 2000).

Section 8371 does not define what constitutes bad faith behavior. However, courts have generally referred to the definition provided by *Black's Law Dictionary* and have held that bad faith is a frivolous or unfounded refusal to pay proceeds of a policy. Terletsky, *supra*: Toy v. Metropolitan Life Ins. Co., 928 A.2d 186 (Pa. 2007).

> "Bad faith" on part of the insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill-will; mere negligence or bad judgment is not bad faith.

Terletsky, *supra*. 649 A.2d at 688.

### 2. Universal's Prompt Investigation, including the Report by Robert Weber, Provided a Reasonable Basis for Universal's Denial of Coverage

Even if Universal's coverage position is ultimately not accepted by this Court, Plaintiffs' must still present evidence that Universal had no reasonable basis for its position and knew of or recklessly disregarded its lack of reasonable basis. Plaintiffs must show that Universal's conduct "imports a dishonest purpose" and is motivated by "self-interest or ill-will."

Here, there is not one iota of evidence of self-interest or ill will. Rather, the evidence shows that Universal conducted a timely and appropriate investigation of Plaintiffs' claim and had a reasonable basis for its coverage denial. Universal began its investigation of Plaintiffs' claim by retaining Crawford and Company to inspect the alleged loss immediately after it was

10

reported. (SOF, at ¶ 6-8). Universal also retained an engineer to meet with Mr. Gillin and inspect the alleged loss within one week of receiving notice of the alleged loss. (SOF, at ¶ 8, 9). The investigation revealed that coverage was not available and Universal promptly issued a denial letter after speaking with the independent adjuster and receiving the engineering report from Mr. Weber. (SOF, at ¶ 11-16). Plaintiffs' own expert and an expert retained by Mr. Gillin's neighbor subsequently agreed with the cause of loss identified by Mr. Weber. (SOF, at ¶ 18-20). Plaintiffs have presented no evidence of bad faith such that Plaintiffs' bad faith claim should be dismissed.

    **E.    Plaintiff's claim for Violation Of The Unfair Trade Practices And Consumer Protection Law Should be Dismissed Because the Pennsylvania "Bad Faith" Statute, is the Exclusive Remedy for Alleged Misconduct with Respect to the Handling of Insurance Claims, and the Complaint Alleges only Nonfeasance, which is Insufficient to Support the UTPCPL claim.**

In order to assert a claim under the UTPCPL a party must allege facts demonstrating malfeasance, which is the improper performance of a contractual obligation. Horowitz v. Federal Kemper Life Assur. Co., 57 F.3d 300, 307 (3d Cir. 1995), citing Gordon v. Pennsylvania Blue Shield, 378 Pa.Super. 256, 264-265, 548 A.2d 600, 604 (1988). Nonfeasance, which is the mere failure to perform, is not sufficient to assert a claim under the UTPCPL. Horowitz, 57 F.3d at 307. It is well established law in Pennsylvania that allegations of an insurer's refusal to pay a claim constitute nonfeasance and fail to state a claim under the UTPCPL. Gordon, 378 Pa.Super. at 264-265, 548 A.2d at 604. See also Leo v. State Farm Mut. Auto. Ins. Co., 939 F.Supp. 1186 (E.D.Pa. 1996), aff'd 116 F.3d 468 (3d Cir. 1997).

In Horowitz, the insurer denied a claim for benefits under a life insurance policy in a letter stating that the policy was null and void because the decedent failed to disclose his terminal

11

illness on the life insurance policy application. Id. As a result, the plaintiffs initiated an action against the insurer for breach of contract, bad faith and a violation of UTPCPL for the insurer's denial of benefits. Id. The Third Circuit Court of Appeals concluded that the letter denying benefits did not constitute malfeasance, and therefore the plaintiffs could not proceed with their UTPCPL claim. Id. at 307.

In Leo, an insured brought an action against her UIM carrier under several theories, including a claim under the UTPCPL. Leo, 939 F.Supp. at 1187. The UTPCPL claim at issue in Leo was premised on allegations that the insurer misrepresented policy provisions, conducted an unreasonable investigation of the claim, refused to make an offer without sufficient investigation, failed to attempt to effectuate prompt settlement and failed to promptly provide a reasonable explanation of the basis for refusing to make a settlement offer. Id. at 1193. In considering these allegations, the Leo court held that the alleged conduct amounted to a mere refusal to pay a claim and thus entered summary judgment in favor of the insurer with respect to the UTPCPL claim.

Further, Section 8371 is the exclusive remedy for alleged misconduct with respect to the handling of claims. Bodnar v. State Farm Mut. Ins. Co., No. AR 08-001337 at 2 (C.C.P. Allegheny Oct. 21, 2008)[3]. In Bodnar, the court held that Section 8371 was the exclusive remedy for alleged misconduct arising out of an insurer's handling of a claim. Id. at 2. The court concluded that where a UTPCPL claim could also constitute a Section 8371 claim, the more specific legislation of Section 8371, rather than the more general legislation of the UTPCPL, should be applied. The court also relied on the Supreme Court's decision in Toy v. Metropolitan Life Ins. Co., 928 A.2d. 186 (Pa. 2007), which held that Section 8371 applied only

---

[3] A copy of the Order and Memorandum of the Court in Bodnar v. State Farm Mut. Ins. Co., No. AR 08-001337 (C.C.P. Allegheny Oct. 21, 2008) is attached hereto as Exhibit "A".

to the handling of a claim. Accordingly, the court dismissed the plaintiff's UTPCPL claim. Id. at 2-3.

Here, the basis for Plaintiffs' purported UTPCPL claim appears to be Universal's alleged failure to pay benefits Plaintiffs allege are due. Like the UTPCPL claims examined in Bodnar, Horowitz, and Leo, this Court should conclude that Plaintiff's UTPCPL claim amounts to nothing more than failure to pay insurance benefits alleged to be owed, which relates to nonfeasance and not malfeasance.

    F.    **Count II of the Complaint For Violation Of The Unfair Trade Practices And Consumer Protection Law Should be Dismissed Because Plaintiffs have not Pled Facts to Establish that they Justifiably Relied on any Unlawful Conduct of Universal.**

In order to sustain a private cause of action under the UTPCPL "a plaintiff must make 'allegations of justifiable reliance and causation, elements essential to any UTPCPL claim.'" Gidley v. Allstate Insurance Company, 09-cv-3701 (E.D.Pa. October 6, 2009), *citing* Seldon v. Home Loan Services, Inc., No. 07-04480, 2009 WL 2394182 (E.D.Pa. Aug. 4, 2009). In Gidley, the Plaintiffs asserted claims under the UTPCPL based upon various allegations pertaining to Allstate's handling of Plaintiffs' UIM claim. The court noted that the UTPCPL provides a private cause of action for "any person who purchases or leases goods or services…and thereby suffers any ascertainable loss…, as a result of the use or employment by any person of a method, act or practice declared unlawful." Id. However, "[b]ecause the loss must occur 'as a result of' unlawful conduct under the UTPCPL, 'a private plaintiff pursuing a claim under the statute must prove justifiable reliance' on the unlawful conduct, not merely that the wrongful conduct caused the plaintiff's injuries." Gidley, at 4, *citing* Seldon, at *11, *quoting* Hunt v. U.S. Tobacco Co., 538 F.3d 217, 221 (3d Cir. 2008). In Gidley, the court held that Plaintiffs failed to sustain a

claim under the UTPCPL because they failed to allege justifiable reliance on Allstate's conduct in handling Plaintiffs' UIM claims. Accordingly, the Court dismissed Plaintiffs' UTPCPL claim.

Here, as in <u>Gidley</u>, Plaintiffs do not allege nor is there any evidence that Plaintiffs sustained any loss as a result of justifiable reliance on Universal's handling of their claim. Accordingly, Plaintiffs' UTPCPL claim should be dismissed.

## IV. CONCLUSION

Universal respectfully requests that summary judgment be entered in its favor and that Plaintiffs' Complaint be dismissed, with prejudice.

Respectfully submitted,

By: _____
Robert E. Dapper, Jr.
PA I.D. #46378
Daniel J. Twilla
PA I.D. #93797
444 Liberty Avenue
Pittsburgh, PA 15222
(412) 456-5555

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the within **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was filed electronically on this 2 day of November, 2010. Notice of this filing will be sent to all Parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Matthew B. Weisberg, Esquire
Prochniak, Weisberg, P.C.
7 South Morton Avenue
Morton, PA  19070

*Counsel for Plaintiffs*

DAPPER, BALDASARE, BENSON,
BEHLING & KANE, P.C.

By: _____
Robert E. Dapper, Jr.
Daniel J. Twilla