IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL GILLIN, ET AL.,** | : |
| **Plaintiffs,** | : CIVIL ACTION |
| | : NO. 09-5855 |
| v. | : |
| **UNIVERSAL UNDERWRITERS INSURANCE COMPANY,** | : |
| **Defendant.** | : |

**MEMORANDUM OPINION**

**Tucker, J.**                                                                                                                                                 **March___, 2011**

Presently before the Court is Defendant, Universal Underwriters Insurance Company's Motion for Summary Judgment (Docs. 9-11); Plaintiffs, Michael Gillin and Ace & Sons, Inc.'s Response in Opposition thereto (Doc.18) and Defendant's Reply to Plaintiff's Response in Opposition, which the Court will treat as a Motion For Leave To Reply (Docs. 19-20). For the reasons set forth below, upon careful consideration of the parties submissions and exhibits thereto, Defendant's Summary Judgment Motion will be **GRANTED**.

**I.**                                            **PROCEDURAL HISTORY**

Plaintiffs initiated the instant action in the Delaware County Court of Common Pleas on November 13, 2009. (Doc. 1) Defendant Universal Underwriters Insurance Company ("Universal" or "Defendant") filed a notice of removal in this Court pursuant to 28 U.S.C. § 1441 et seq. and 28 U.S.C. § 1446 on December 9, 2009. The parties' pleadings reflect that Plaintiffs are citizens of Pennsylvania, and Defendant is Kansas corporation with a principal place of business in the State of Kansas (Compl.

¶1-3.) The amount in controversy at the time of Plaintiff's initial filing was $150,000, thus exceeding the jurisdictional requirement of $75,000.00. (Compl. ¶¶ 22, 26, 30.) Therefore, jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332. Pursuant to the terms of the contract entered into by the parties, the matter was then referred to arbitration. The subject motion, Universal's Motion for Summary Judgment (Doc. 10) was subsequently filed on November 2, 2010. The Court denied Defendant's motion to stay arbitration pending adjudication of the motion and the parties proceed to arbitration on January 11, 2011. (Doc. 17) Having been unsuccessful at arbitration, the Court now addresses the pending motion.

**II.         FACTUAL BACKGROUND**

The instant action arises from an insurance coverage dispute. At all relevant times, Plaintiff Ace & Sons Inc. ("Ace & Sons") was the holder of a property insurance policy, policy number 137258H, entered into with Universal, an insurance company. (Def.'s Mot. Summ. J. Ex. G. at 3) Plaintiff, Michael Gillin ("Gillin") is a principal of Ace & Sons. (Compl. ¶4.) On or about November 29, 2002, the insured property located at 99 Chester Pike, Darby, Pennsylvania sustained severe damage as a result of the collapse of a wall on neighboring property owned by Fink, S&S Automotive Sales, TAG, Inc. ("Fink") and Darby Borough. (Compl. ¶ 6.) The property sustained structural damage in addition to significant water infiltration damage. (Compl. ¶ 7.) Consequently, Plaintiffs notified Defendant of the occurrence and submitted a claim for coverage under the policy. (Compl. ¶ 8.) Defendant verbally declined Plaintiff coverage for the claim on December 3, 2002, and again on December 16, 2002. (Def.'s Mot. Summ. J. Ex. E. at 2) These denials were based upon a verbal inspection report rendered by an independent adjuster with Crawford & Company. (Def.'s Mot. Summ. J. Ex. E. at 2) <u>See also</u>, (Mason Dep. 11: 22-24, Apr. 26, 2010.).

On or around November 26, 2002, Robert C. Weber PE, RPA, Defendant's engineer inspected the premises at Universal's request. (Mason Dep. 26: 1-6.) Thereafter, Weber prepared a report in which he opined that "the retaining wall in question bowed and cracked due to outward movement of soil and hydrostatic pressure." (Def.'s Mot. Summ. J. Ex. E. at 2) Moreover, in a letter dated December 3, 2002, Weber advised Tory Powers, Code Enforcement Official of the Borough of Darby that

> It is further my professional opinion that the retaining wall has moved as a result of of soil and hydrostatic pressure from behind the retaining wall and, therefore, has and continues to exert a greater horizontal force on the left side wall of Ace & Sons Body Shop building than that on the right side.

( Def.'s Mot. Summ. J. Ex. C. at 3)

Subsequent to Weber's investigation, Universal denied Plaintiff's claim in a letter dated January 14, 2003. Plaintiffs requested reconsideration of Defendant's claim denial. (Compl. ¶ 10.) Upon reconsideration, Defendant again denied Plaintiffs' claim for insurance coverage under the policy in a letter dated December 20, 2003. ( Def.'s Mot. Summ. J. Ex. F. at 2) The letter stated in pertinent part:

> As per your request of October 28, 2003 we have reconsidered the denial of coverage for the above captioned loss. [Type of Loss: Retaining wall movement due to earth movement and hydrostatic pressure] Once again we have concluded that there is no coverage for the damage to the insured building resulting from the neighboring properties shifting retaining wall.
>
> Regarding your assertion that coverage should apply due to the fact that the damage to the insured property was a result of the insured property being trespassed upon please refer to the exclusionary language of exclusion (i)of Property Part 330 of the insureds UNICOVER V Policy form. This exclusion excludes losses caused directly or indirectly from settling, shrinkage, bulging or expansions of foundations, walls, floors, roofs or ceilings. The concurrent causation language of the policy indicates that such losses are excluded regardless of any other cause or event that takes place at the same time or in any sequence to such loss. If the insured property was indeed trespassed upon during the construction of the wall in question by the neighboring landowner, Troy Fink, and/or persons in his employ the trespassing would be

> considered another cause or event that occurred at the same time or in any sequence to the loss.
>
> Please also refer to the exclusions reviewed in our earlier letter of 1/14/03, exclusions (l), (o) and (s) of Property Part 330 of the insured's UNICOVER V policy form. Exclusion (l) excludes loss resulting from earth movement, including but not limited to earthquake, volcanic eruption, explosion or effusion, landslide, mudflow or mudslide, earth shrinking, rising or shifting. Exclusion (o) excludes loss resulting from underground water that exerts pressure on, flows seeps or leaks through foundations and walls. Exclusion (s) excludes loss from collapse. As with exclusion (i) the concurrent causation language of the polciy would also apply to exclusions (l), (o), (s).
>
> ( Def.'s Mot. Summ. J. Ex. F. at 2)

Moreover, on September 30, 2005, Richard Roberts, P.E., investigated the property on behalf of Plaintiff, Gillin. Roberts issued a report in which he opined that the collapse of the bearing wall was a direct result of additional retained soil placed behind the retaining wall. (Pl.'s Mem In Support of Response in Opp'n 11) Specifically, Roberts noted that

> After construction of the retaining wall, additional soil backfill was placed behind the retaining wall. This resulted in greater horizontal earth pressure on [the subject premises] than previously existed.
>
> Another result of the construction of the retaining wall was the collapse of a bearing was in the other building adjacent to the wall. This was a direct result of additional retained soil being placed behind the retaining wall.
>
> My analysis of the retaining wall indicates that the wall does not meet the building code requirements for safety against overturning and sliding. The wall would fail at least by sliding due to the soil loads only and this means that the wall has, and will continue to exert horizontal force on the northwest corner of the subject premises towards the front of the building.

(Pl.'s Mem In Support of Response in Opp'n 11)

On or about April 15, 2004, Plaintiffs initiated an action against Fink, S&S Automotive Sales, TAG, Inc. ("Fink") and Darby Borough in the Delaware County Court of Common Pleas for the damages sustained to its property. (Compl. ¶ 14.) Plaintiffs ultimately recovered $140,000.00 in damages against the Defendants in that action. (Compl. ¶ 15.) Gillin testified that forty thousand

dollars of the award received by Plaintiffs was spent on repairs. On or around November of 2008, Plaintiff Gillin sold the subject property for $165,000.00 (Gillin Dep: 5: 22-24; 12: 20-22, Apr. 26, 2010.).

Subsequently, Plaintiffs initiated the instant action against Universal, alleging the following three claims; (1) one count of Bad Faith; (2) one count of Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); and (3) one count of Breach of Contract and Covenant of Good Faith and Fair Dealing. After Defendant filed the instant Motion For Summary Judgment, Plaintiff voluntarily withdrew count one of the complaint without prejudice as well as count two of the complaint with prejudice. (Mem In Support of Response in Opp'n 7) Consequently, the sole remaining count is the breach of contract claim which is the subject of the instant memorandum. In their prayer for relief Plaintiffs seek consequential damages of $67, 237.19, the amount of Plaintiffs' attorney's fees secondary to the initiation, prosecution and litigation of the underlying action.

**III.                          LEGAL STANDARD**

Summary judgment is appropriate where the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). See also Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir.

2008). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex, 477 U.S. at 327 (1986).

Once the movant has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Under Rule 56(e), the opponent must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007). If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2). At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-movant. See Matsushita, 475 U.S. at 587; Horsehead Indus., Inc. v. Paramount Commc'ns, Inc., 258 F.3d 132, 140 (3d Cir. 2001). The court must award summary judgment on all claims unless the non-movant shows through affidavits or admissible evidence that an issue of material fact remains. See, e.g., Love v. Rancocas Hosp., 270 F. Supp. 2d 576, 579 (D.N.J. 2003); Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F. Supp. 2d 324, 330 (D.N.J. 2002).

**IV.**                                         **DISCUSSION**

**A.**      **Choice of Law**

As a preliminary matter, the Court will address the applicable choice of law for the instant

action. A federal court sitting in diversity must apply the substantive law as decided by the state's highest court. Travelers Indem Co. of Illinois v. DiBartolo, 131 F.3d 343, 348 (3d Cir. 1997)(citations omitted). Since jurisdiction in this case is predicated on the diverse citizenship of the parties, the Court must apply the choice of law rules applicable in the Commonwealth of Pennsylvania. Klaxon v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496-497 (1941). The parties here do not dispute the application of Pennsylvania law to this matter. Therefore, in accordance with the rules set out in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78-80 (1938) the Court will evaluate the substantive legal issues pursuant to Pennsylvania law.

**B.     Breach of Contract**

To succeed on a breach of contract claim, a plaintiff must show: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." Wedemeyer v. United States Life Ins. Co., Civ. A. No. 05-6263, 2007 U.S. Dist. LEXIS 15742, at * 52 (E.D. Pa. 2007)(quoting Corestates Bank, N.A. v. Cutillo, 1999 PA Super 14, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). Plaintiffs breach of contract claim rests on the premise that Defendant's denial of their claim for coverage under the subject insurance policy constitutes a breach of their insurance contract.

Defendant argues that it is entitled to summary judgment because Plaintiffs' breach of contract claim fails as a matter of law as they cannot establish the second element—that Universal breached a duty imposed by the policy when it denied Plaintiffs coverage for the November 29, 2002 claim. Specifically, Universal argues that (1) the loss was caused by soil and hydrostatic pressure; (2) the policy excluded losses caused by soil and hydrostatic pressure; and (3) the exclusions for losses caused by soil and hydrostatic pressure apply regardless of whether any cause contributes to the loss. Alternatively, Defendant argues that Plaintiffs' breach of contract claim should be dismissed

because they have been fully compensated for their damages by the $165.000.00 award entered in their favor and against Fink and Darby Borough in the previous action.

The parties here do not dispute any of the key facts involved in the instant action. To resolve this case and determine whether Defendant breached its contract the Court must interpret the terms of the insurance policy. See Madison Construction Co. v. Harleysville Mutual Ins. Co., 557 Pa. 595, 735 A.2d 100, 106 (Pa. 1999) In performing this task, the Court's goal is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. Gene & Harvey Builders, Inc. v. Pennsylvania Manufacturers' Association Ins. Co., 512 Pa. 420, 517 A.2d 910, 913 (Pa. 1986) (citations omitted). When the language of the policy is clear and unambiguous, a court is required to give effect to that language. Id. Thus, words of common usage in an insurance policy are construed according to their natural, plain, and ordinary sense. Madison Construction Co., 735 A.2d at 108

However, when a provision in a policy is ambiguous, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage. See Gene, 517 A.2d 910. "Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" Madison Construction Co., 735 A.2d at 106. (quoting Hutchison v. Sunbeam Coal Co., 513 Pa. 192, 519 A.2d 385, 390 (Pa. 1986)). The mere disagreement between parties as to the proper interpretation does not necessarily render the contract or a provision thereof ambiguous. See Vogel v. Berkley, 354 Pa. Super. 291, 511 A.2d 878, 881 (Pa. Super. 1986)). A contract is ambiguous only "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Steele v. Statesman Ins. Co., 530 Pa. 190, 607 A.2d 742, 743 (Pa. 1992). Nonetheless, courts "should read policy provisions to avoid ambiguities if possible and should not torture the language to create them." Spezialetti v. Pac. Employers Ins. Co., 759 F.2d

1139, 1142 (3d Cir. 1985). See also Galvin v. Occidental Life Ins. Co. Of Cal., 211 A.2d 120, 122 (Pa. Super. 1965) (noting that "[a] Court [should] adopt the interpretation which, under all circumstances of the case, ascribes the most reasonable, probable and natural intention of the parties, bearing in mind the objects manifestly to be accomplished."). Id.

Finally, "in determining what the parties intended by their contract, the law must look to what they clearly expressed. Courts in interpreting a contract, do not assume that its language was chosen carelessly." Steuart v. McChesney, 498 Pa. 45, 444 A.2d 659, 662 (Pa. 1982)(quoting Moore v. Stevens Coal Co., 315 Pa. 564, 173 A. 661, 662 (Pa. 1934)). Accordingly, the Court will not consider merely individual terms utilized in the insurance contract, but the entire insurance provision to ascertain the intent of the parties.

With these principles in mind, the Court now addresses the arguments raised by the parties. The Court's analysis begins with the language of the policy, with a particular focus on Part 330, Property Unicover Coverage and the exclusions therein. The relevant portions of the policy provide:

> **EXCLUSIONS- PERILS**- We will not pay for LOSS caused directly or indirectly by any of the following; such LOSS is excluded regardless of any other cause or event that takes place at the same time or in any sequence to such LOSS:
>
> (i) animals, birds, mold, fungus, decay, wet or dry rot; smog smoke, vapor or gas from agricultural or industrial operations; settling, cracking, shrinkage, bulging or expansion of foundations, walls floors, roofs, or ceilings.
>
> (l) earth movement, including but not limited to earthquake, volcanic eruption, explosion or effusion, landslide, mudflow or mudslide, earth shrinking, rising or shifting. If fire or explosion follows, WE will pay only for the LOSS by fire or explosion. This exclusion does not apply to property in transit or glass;
>
> (o) flood, surface water, waves, tidal wave or water, overflow of streams or other bodies of water, or their spray, all whether or not driven by wind; underground water that exerts pressure on, flows seeps or leaks through foundations, walls, basement and other floors, or any opening in any of them. If fire, explosion or BREAKDOWN follows, WE will pay only for the LOSS by fire, explosion or BREAKDOWN.

>     (s) collapse, except when caused by SPECIFIED PERILS, UNNAMED
>     PERILS or BREAKDOWN to the covered property.

( Def.'s Mot. Summ. J. Ex. G. at 2)

After reviewing the language of the policy, and bearing in mind the well settled principles of contract interpretation, the Court finds the language of the policy to be clear and unambiguous. It is axiomatic that no interpretation of contractual language is permissible, let alone warranted, unless there is an ambiguity which must be resolved. Steuart v. McChesney, 498 Pa 45, 444 A.2d 659 (1982) Accordingly, the Court will give effect to the clear language of the contract. See Kvaerner Metals Div. of Kvaerner United States, Inc. v. Commercial Union Ins. Co., 589 Pa. 317, 331 (Pa. 2006).

"In Pennsylvania, the insured has the burden of proving facts that bring its claim within the policy's affirmative grant of coverage." McMahon v. State Farm Fire & Cas. Co., 2007 U.S. Dist. LEXIS 34137 (E.D. Pa. May 8, 2007) (citing Koppers Co., Inc. v. Aetna Cas. and Sur. Co., 98 F.3d 1440, 1446 (3d Cir. 1996). Conversely, where an insurer denies a claim for coverage because of one ore more policy exclusions, "the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense." Madison Construction Co., 735 A.2d at 106.

In opposing summary judgment, Plaintiffs now argue that that the "efficient proximate cause" of the damage sustained to the Chester Pike property was the negligent construction of a retaining wall. (Pl.'s Response in Opp'n ¶ 2 at 5) Specifically, Plaintiffs engineers concluded that the improper construction caused pressure and drainage causing the adjoining wall on Plaintiff's property to crack and shift off of its footing. (Pl.'s Mem In Support of Response in Opp'n 1) This, according to the engineer was the "efficient proximate cause" of the damage sustained to Plaintiffs' property. As such, Plaintiff argues that their claim does not fall into any of the enumerated exclusions as negligent construction is a loss covered under Plaintiff's insurance policy. (Pl.'s

Response in Opp'n ¶ 3 at 5). The Court finds it interesting that Plaintiff asserts this argument now for the instance as Plaintiffs previously conceded that the damage sustained to its property was caused by soil and hydrostatic pressure. (Pl.'s Response in Opp'n ¶ 4.) In any event, Plaintiffs' reliance on the efficient proximate cause doctrine, which holds that when there are multiple causes of loss, the policyholder's claim is covered as long as the immediate or proximate cause of loss is covered by the policy, is unavailing as the lead-in clause negates the application of this doctrine. See Colella v. State Farm Fire & Casualty Company, 2011 U.S. App. LEXIS 1306 *14 (3d Cir. 2011) (reasoning that the presence of a lead-in clause negates the applicability of the efficient proximate cause doctrine). Moreover, "courts in other jurisdictions have held that the efficient proximate cause doctrine does not apply in the face of an expansive qualifying lead-in clause. . ." T.H.E. Ins. Co. v. Charles Boyer Children's Trust, 455 F. Supp. 2d 284, 292 (M.D. Pa. 2006), affirmed 269 Fed.Appx. 220 (3d Cir. 2008). In Charles Boyer Children's Trust, the District Court that in rejecting application of the efficient proximate cause doctrine, the Supreme Court of Colorado reasoned that "[a]lthough loss from third party negligence is covered under an all risk policy, that coverage is expressly subject to the language of the exclusions included in the policy.") Id. (citing to Kane v. Royal Ins. Co. of America, 768 P.2d 678, 685 (Colo. 1989)).

  Contrary to Plaintiffs argument, Defendant argues that Plaintiffs' claim is not covered under the policy because it falls into one or more of the exclusions (exclusions (i), (l), (o) and (s) when coupled with the lead-in clause. After investigation, Defendant's engineer concluded that the damage to Plaintiff's property resulted from soil and hydrostatic pressure. Thus, Defendant argues that coverage for the damage to the Plaintiffs' property is specifically excluded under the policy. In their Response in Opposition Plaintiffs fail to discuss why the above-listed exclusions are inapplicable.

The Court agrees with Universal and finds that Plaintiffs' loss falls within the earth movement, cracking and collapse exclusions and therefore, Defendant properly denied Plaintiffs' claim for coverage under the policy. The policy clearly states that loss incurred as a result of earth movement, cracking and/ or collapse is not subject to coverage. Engineers retained by both parties opined that the loss was caused by a combination of soil movement and hydrostatic pressure which occurred as a result of Fink's retaining wall. Plaintiff argues, however, that "[t]he earth movement, hydrostatic pressure, and other natural forces were a secondary result of the retaining wall's negligent construction." (Pl.'s Mem In Support of Response in Opp'n at 12.) This argument ignores the presence of the lead-in clause. Under Pennsylvania law, language of a lead-in clause in an insurance policy stating that any loss caused by enumerated exclusions is excluded regardless of any cause or event and regardless if from natural or external forces is unambiguous. See Charles Boyer Children's Trust, 455 F.Supp.2d 284. Here, the insurance policy contained a lead-in clause that bars coverage for any loss caused directly or indirectly by an enumerated event. Moreover, the lead-in clause provides that the sequence of the cause is of no consequence. The Court finds that this clause is only capable of one construction, that is, when more than one cause is involved in a loss which includes one of the excluded events named under the lead-in clause, in this case, earth movement, there is no coverage regardless of whether the causes acted at the same time or in any sequence with the excluded event. Thus, regardless of any other attributing cause or event, Plaintiffs' claim is precluded under the policy. The negligent construction of the retaining wall was a secondary cause. The Court does not find the exclusion clause of the subject policy to be ambiguous therefore, the Court declines to accept Plaintiffs' argument that where a dominant exclusion is ambiguous then the inferior anti-concurrent clause would be of no consequence.

Plaintiffs concede that "[w]hile it would appear on the face of the policy that the anti-

concurrent clause coupled with the earth movement clause would support Defendant's stance that there was a proper denial of coverage, such superficial reading ignores the much more deeper analysis regarding policy construction. . . ." (Pl.'s Mem In Support of Response in Opp'n 12.) The Court declines Plaintiffs' invitation to read an ambiguity into the contract, as no ambiguity exists on the face of the provisions at issue. Taken together, the lead-in clause and exclusions (i), (l), (o) and (s) bar coverage for the instant claim. The plain language of the policy clearly provides that the exclusions apply irrespective of what caused the excluded event and regardless of whether the cause of the excluded event was from natural or external forces. It clearly and succinctly states that "regardless of any other cause or event that takes place at the same time or in any sequence to such LOSS." (Def.'s Mot. Summ. J. Ex. G. at 2)

In Colella, the Third Circuit recently affirmed a District's Court grant of summary judgment in favor of Defendant, State Farm Fire & Casualty Company, where the insurance policy contained a lead-in clause, like the one here, that unambiguously barred coverage for Plaintiff's claims. See 2011 U.S. App. LEXIS 1306 (3d Cir. 2011). There, the Third Circuit reasoned that "[w]e agree with State Farm and see no way to interpret the words "regardless of the cause" in a manner that provides coverage for the Colellas. The State Farm policy states that it excludes coverage for damage caused by water below the surface of the ground, regardless of the cause of the subsurface water." Id. at *13. The Court finds no reasons to depart from the reasoning in Colella. Here, there is no other way in which to interpret the expansive language of the lead-in clause at issue. Simply put, Universal's policy bars coverage for the claim submitted by Plaintiffs.

Accordingly, because no reasonable jury could conclude that Universal breached its insurance contract with Plaintiff, the Court finds that Universal is entitled to summary judgment in its favor. The Plaintiffs admit that the damage sustained to the insured property was caused by soil

and hydrostatic pressure. (Pl.'s Response in Opp'n ¶ 4.) Coverage for damages resulting from soil and hydrostatic pressure is unambiguously precluded by the lead-in clause and the above-mentioned exclusions when coupled together. The Court's inquiry can go no further.

To avoid summary judgment, Plaintiffs further argue that at the very least, a genuine issue of fact exists that would preclude entry of summary judgment in Universal's favor. However, Plaintiffs fail to identify the specific evidence in the record that creates a material issue of fact as to Universal's alleged breach, nor could the court find any upon its own examination of the record.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion For Summary Judgment is GRANTED. Ii is further ordered that count one of Plaintiffs' Complaint is dismissed without prejudice and count two of Plaintiffs' Complaint is dismissed with prejudice.

An appropriate Order follows.

**BY THE COURT:**

**/s/ Petrese B. Tucker**
_____
**Hon. Petrese B. Tucker, U.S.D.J.**